| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JANET E. LONNEKER,<br><br>                       Debtor.<br><br>RICHARD LAMBERTUS, an individual,<br>      Plaintiff and Appellant,<br>  v.<br>JANET E. LONNEKER,<br>      Defendant and Appellee. | Civil No.: 17cv732-JAH (KSC)<br>Bankruptcy No. 15-08140-LA7<br>Adversary No. 16-90054-LA<br><br>**ORDER:**<br><br>**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING TO THE BANKRUPTCY COURT** |

## INTRODUCTION

Richard Lambertus ("Lambertus" or "Appellant"), proceeding *pro se*, appeals the Bankruptcy court's March 30, 2017 order dismissing his adversary action. That action challenged the debtor's discharge under various provisions of the Bankruptcy Code, 11 U.S.C. § 727(a). The issues on appeal have been fully briefed and argued. Having considered the parties' submissions and for the reasons set forth below, the Court **AFFIRMS in part, REVERSES in part** and **REMANDS** for further proceedings consistent with this Court's Order.

1

**I. BACKGROUND**

John M. Lonneker ("John") and Janet E. Lonneker ("Debtor" or "Appellee"), former husband and wife, (collectively referred to as "the Lonnekers") were managing members of Liberty Metals Group, LLC ("LMG"). *Doc. No.* 14 at 41 ¶5. In August of 2014, as part of dissolution proceedings, the Lonnekers entered into a Martial Separation Agreement ("MSA") under which marital assets were divided. *Doc. No. 7-1* at 76, 131-135. Approximately six months later, in February 2015, John filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code. 11 U.S.C Chapter 7. *Doc. No.* 7-1 at 229 ¶ 8.1. In December 2015, Debtor also filed a petition for Bankruptcy listing Appellant as a potential creditor and member of LMG. *Doc. No.* 7-1 at 117, 229. At the heart of this dispute is Appellant's allegation that the Lonnekers, prior to filing their bankruptcy petitions, embezzled hundreds of thousands of dollars from LMG by taking out loans in the company's name, withdrawing money and removing precious metal for personal use, family or household purposes. *See Doc. No.* 14 at 41, ¶ 8-9, 13 (initial adversary complaint); *Doc. No. 15* at 28, ¶ 5, 10, 13 (first amended adversary complaint); *Doc. No. 7-1* at 242, ¶ 15.1, 15.5, 17-18.4 (second amended adversary complaint).

On March 21, 2016, Appellant, appearing *pro se,* filed his initial adversary complaint for denial of discharge under 11 U.S.C. § 727(a)(2), §727(a)(4)(A) and §727(a)(4)(B) and reserved the right to assert additional claims post-discovery. *Doc. No.* 14 at 40-48; *see also Doc. No.* 7-1 at 230. On March 25, 2016, prior to the filing of a responsive pleading, Appellant filed a First Amended Complaint ("FAC") modifying his statement of facts to relay his frustrations with not receiving certain documents requested of Debtor, John and their attorney. *Doc. No.* 15 at 27-35. However, the claims for relief remained the same. Debtor filed a motion for judgment on the pleadings. On December 20, 2016, judgment was granted on the pleadings in favor of Debtor. *Doc. No*. 7-1 at 215-217. Over Debtor's

2

objection, the court granted leave to amend the first and second claims only.[1] The court granted leave for Appellant to identify specific assets Debtor once owned as a result of the MSA that were not accounted for in her bankruptcy petition and were disposed of, with intent to hinder, delay, or defraud Appellant, within the time frame allowed pursuant to 11 U.S.C. §727(a)(2)(A). *Id.* at 215. The court also granted Appellant leave to plead facts that Debtor made a false oath as to any asset she (as opposed to her ex-husband) owned pursuant to §727(a)(4)(A). *See Id* at 216.

Appellant filed a Second Amended Complaint ("SAC") asserting eleven claims for relief, eight of which were alleged for the first time. The new claims included: a claim pursuant to section 727(a)(3) (Claim 2); a claim under section 727(a)(4)(D) (Claim 4); a claim against Debtor's attorneys pursuant to 11 U.S.C. § 526(a)(2) (Claim5); and six state law claims (Claims 6-11) for breach of fiduciary duty, fraud and intentional misrepresentation, intentional infliction of emotional distress, fraudulent concealment, and false promise. *Doc. No.* 7-1 at 227-254. In addition, Appellant filed the SAC on behalf of himself, as an individual, and as Trustee of the Lambertus Family Trust. *Id.* at 227.

Debtor filed a motion to dismiss the SAC pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 9, 12(b)(6), and 12(f). Appellant filed an opposition attaching photos of furnishings alleged to be undervalued in Debtor's schedules. The court granted Debtor's motion to strike the photos and dismissed all claims with prejudice. *Doc. No.*7. at 325-326. Lambertus filed a timely appeal. *Doc. No.* 1.

## II. ISSUES ON APPEAL[2]

1. Whether the Bankruptcy court erred in striking photographs attached to the responsive pleading.

---

[1] Appellant withdrew opposition to judgment being granted on the remaining claim under §727(a)(4)(B).
[2] Appellant's opening brief ambitiously lists 14 issues on appeal, references an order squashing subpoenas, discusses grievances against Appellee's attorneys, and disputes the bankruptcy court's compliance with judicial canons. These matters are outside of the bankruptcy court's March 30, 2017 order from which this appeal lies and therefore exceed the scope of this Court's jurisdiction.

3

17cv732-JAH (KSC)

2. Whether the Bankruptcy court erred in dismissing new claims alleged in the SAC with prejudice.

3. Whether the Bankruptcy court erred in dismissing amended claims in the SAC with prejudice.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from a final order of the bankruptcy court pursuant to 28 U.S.C. § 158(a); *See In re AFI Holding, Inc.*, 530 F.3d 832, 836 (9th Cir. 2008) ("[A] bankruptcy court order is final and thus appealable where it (1) resolves and seriously affects substantive rights and (2) finally determines the discrete issue to which it is addressed.") The dismissal of an adversary complaint constitutes a final appealable order. *Id*.

A trial court's evidentiary rulings are reviewed for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). The decision to grant a motion to dismiss an adversary proceeding is reviewed *de novo. Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir.2012); *In re Levander*, 180 F.3d 1114, 1118 (9th Cir. 1999) (a district court reviews a bankruptcy court's conclusions of law *de novo*, and its findings of fact for clear error.) If dismissal is granted without leave to amend, the appellate court reviews "the denial of leave to amend for an abuse of discretion, see *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011), and the question of futility of amendment *de novo*, see *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010)." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016).

### IV. DISCUSSION

**A. Procedural Defects on Appeal**

As a preliminary matter, Appellee requests the Court disregard portions of Appellant's argument due to noncompliance with page limitations and requests dismissal of the appeal, in its entirety, as untimely.

1. Excessive Length

This Court's October 23, 2017 Order required Appellant's opening brief to comply with Civ.L.R.7.1.h, a rule generally applicable to motions practice. The Court finds that the limits set forth by Rule 32(a)(7)(A) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) limiting a principal brief to 30 pages is more appropriate. See *Fed. R. App. P*. Rule 32(a)(7)(A). Accordingly, the Court GRANTS in part and DENIES in part Appellee's request. For purposes of this appeal, the Court grants the request and declines to entertain argument contained on pages thirty-one through thirty-three of Appellant's opening breif.

2. Untimeliness

Appellant failed to file his appellate opening brief in accordance with this Court's scheduling order. *Doc. No*. 3. The Court issued an order to show cause why the appeal should not be dismissed for want of prosecution pursuant to *Fed. R. Bank. P*. 8018(a)(4). *See Doc. No*. 11. Attorney Cutchin appeared on behalf of Appellee at the OSC hearing and Appellant appeared *pro se*. Determining good cause had been shown, the Court reset oral argument and ordered Appellant to serve and file his opening brief and supporting evidence on or before November 17, 2017. *Doc. No*. 12. Appellant's opening brief was received by this Court on November 21, 2017. *Doc. No*. 14. However, it was timely filed - although mistakenly - with the Bankruptcy court in case number 16-90054 LA. Due to Appellant's *pro se* status, the Court considers the opening brief timely filed. Appellee's request for dismissal is DENIED.

**B. Evidentiary Ruling**

The bankruptcy court granted a motion to strike photographs attached to Lambertus' opposition to the motion to dismiss the SAC. The photos, labeled "undisclosed assets" depict furnishings in a home alleged to have been owned by Debtor. Each household item is assigned a dollar value, the sum of which is listed at the top of each photo indicating the alleged value of the contents in each room of the home. Debtor, in her reply, objected to the introduction of the photos on relevance and foundational grounds.

In ruling on the motion to strike the court found:

> The exhibit of photographs goes beyond the four corners of the SAC and are not matters that can properly be the subject of judicial notice. The photographs are not authenticated, lack foundation and contain improper opinion testimony.

In general, when ruling on a motion to dismiss, a court must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). An exception to this rule is the "incorporation by reference doctrine, which permits [courts] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions…" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Although the SAC does allege facts related to the omission or devaluation of assets within the home, Lambertus failed to lay an adequate foundation from which the court could determine Debtor's interest in the household items depicted in the photos during the relevant time period. Therefore, the Court concludes that the bankruptcy court did not abuse its discretion in striking the photographs.

**C. Substantive Rulings**

1. <u>Dismissal of New Claims: SAC Claims 2, 5-11</u>

The prior order of the bankruptcy court, granting judgment on the pleadings as to the FAC, was issued with leave to amend only as to the first and second claims for relief under Sections 727(a)(2) and 727(a)(4). Regarding Claim 1, under §727(a)(2), the court's order granted leave to amend to the extent "plaintiff [could] identify specific assets that debtor owned and plausibly plead that debtor transferred or disposed of these assets with the requisite intent within one year of her bankruptcy petition." *See Doc. No. 7-1* at 215-217. In regard to Claim 2, under 727(a)(4), leave to amend was granted "to the extent plaintiff [could] plead that (a) defendant (Janet) made a false oath; (b) in connection with this bankruptcy case; (c) regarding this ring, or any other identifiable asset of material value, that Janet Lonneker owned (as opposed to John Lonneker)." *Id*.

Within the second and fifth through eleventh causes of action in the SAC, Appellant asserts new claims brought before the Bankruptcy court for the first time. The court dismissed Claims 2 and 5-11 of the SAC with prejudice on two separate grounds: (1) leave to amend was on a limited basis and (2) new claims were either time-barred or did not relate back. In granting the motion to dismiss the court explained:

> This Court's ruling of 12/20/16 granted defendant's motion for judgment on the pleadings on this claim in the FAC with limited leave to amend the Sec. 727(a)(2)(A) and Sec. 727 (a)(4) claims (citations omitted). The Court did not grant leave to amend the FAC to add a new party or to add the new claims pled in the SAC. The new claims are either time-barred and/or they do not relate back to the original complaint. They are dismissed with prejudice. See FRBP 7015(c).

When a court grants limited leave to amend, a Plaintiff may not add additional claims without seeking further leave of court. *Fed. R. Civ. P.* 15(a). "[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010). The prior order granting leave to amend was limited in scope. Plaintiff was therefore required to seek leave of court before adding new claims.[3]

2. Dismissal of New SAC Claim 4: § 727(a)(4)(D)

Similarly, in the fourth cause of action[4], Lambertus asserts a new claim under 11 U.S.C. § 727(a)(4)(D), alleged for the first time in the SAC. However, the court dismissed Claim 4 on different grounds:[5] (1) the claim did not relate-back to the original complaint, and (2) it was insufficiently plead to state a claim on which relief could be granted.

---

[3] Because the bankruptcy court did not err in dismissing newly alleged Claims 2 and 5-11, this Court need not determine whether each new claim was time-barred or related-back to the original complaint.
[4] The SAC mislabels the §727(a)(4)(D) claim as the fifth, as opposed to the fourth, claim.
[5] The Court presumes that the bankruptcy court did not dismiss claim four on the same grounds as claims 2, and 5-11, because it's prior order granting leave for a limited purpose included leave to amend any claim arising under section 727(a)(4).

7

*a. Relation-Back*

A claim or defense asserted in an amended pleading "relates back" to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set forth or *attempted* to be set forth in the original pleading." *Fed. R. Civ. P.* 15(c)(1)(B) (emphasis added). "[The Court] will find such a link when 'the claim to be added will likely be proved by the same kind of evidence offered in support of the original pleadings.'" *Dominguez v. Miller*, 51 F.3d 1502, 1510 (9th Cir. 1995) (quoting *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966); *see also Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 738 (9th Cir. 1982) (noting that once the defendant is in court on a claim arising out of a particular set of facts, he is not prejudiced if another claim, arising out of the same facts, is added).

Section 727(a)(4)(D) provides that a debtor shall not be granted a discharge if:

> the debtor knowingly and fraudulently, in or in connection with the case - withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

The initial complaint alleges debtor "omitted…Form 122A-1" which requires a debtor list the average monthly income received from all sources, derived during the six full months before the filing of bankruptcy pursuant to 11 U.S.C. § 101(10A)[6]. *See Doc. No.* 14 at 42; Compl. ¶16. The initial complaint further alleges the United States Trustee requested a list of documents and that information was not provided by debtor, "as a means to frustrate [Appellant]." *Id.*; Compl. ¶ 17. At the time the initial complaint was filed, Debtor still had an opportunity to provide all documents requested. The SAC alleges Debtor "ignored [the] US Trustee['s] document request and concealed all business records," including an American Express ("AMEX") credit card statement. *See Doc. No.* 7-1 at 245; SAC ¶21. In

---

[6] If a petitioner's debt is not primarily consumer debt, a petitioner is exempted from a presumption of abuse and omission of debtor's income is appropriate. §707(b)(2).

8

addition, the SAC includes an assertion that Debtor did so knowingly and fraudulently by alleging that Debtor misrepresented her ability to obtain such documents.

The new claim under §727(a)(4)(D) "ar[ises] out of the conduct, …set forth or attempted to be set forth in the original pleading." The list of documents requested by the Trustee and the documents actually provided by debtor would likely constitute the type of evidence offered to support claims within the original pleading. *See Dominguez*, 51 F.3d at 1510. The documents requested by the Trustee, but not provided by Debtor, are easily identifiable and form the basis of a claim under §727(a)(4)(D). The Court finds that the bankruptcy court erred in dismissing Claim 4 of the SAC on grounds that it did not relate-back to the original complaint.

### *b. Failure to State a Claim*

The bankruptcy court also dismissed Claim 4 because "it was directed at the inability to ascertain the financial condition of John – not the debtor" and therefore failed to state a claim for which relief could be granted.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" (emphasis added). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing the SAC, general allegations contained within the statement of facts are incorporated by reference within each specific claim for relief. In the general allegations, Appellant refers to "*the John*" or "*the John's* property" multiple times. It is unclear whether Appellant is referring to "the Lonnekers" as a unit or only John Lonneker

9

17cv732-JAH (KSC)

when he alleges that Debtor knowingly and fraudulently withheld documented information. Section 727(a)(4)(D) requires that the information withheld relate specifically to Debtor Janet Lonneker's separate property and therefore the Bankruptcy Court did not err in dismissing Claim 4 for failure to state a claim.

   *c. Leave to Amend*

The bankruptcy court dismissed Claim 4 without further leave to amend. The court noted that the SAC was Appellant's third draft of the complaint, each draft "becoming increasingly more unintelligible." The Court interprets the bankruptcy court's denial of leave to amend as based, in part, on futility. *Carvalho*, 629 F.3d at 893.

If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *United States ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1052 (9th Cir.2001). In Appellant's opening brief, he clarifies that information is being withheld to frustrate and delay Appellant's ability to understand the financial condition of "Appellee." *Doc. No*. 14 at 28-29. He adds that Appellee has also concealed records of trust accounts held with Stifel Trust Company, N.A., and/or its affiliates, and records relating to the "Cash to Silver Conversion." Having filed his FAC four days after his initial complaint, Appellant contends that the original complaint and the FAC are virtually identical; adding only eight statements of fact relating to the omission of information requested in Form 122A-1. He further contends that since the FAC was filed prior to Appellee's answer, no judicial resources were expended.

While Appellant has in fact filed three complaints, only the FAC and SAC have been challenged and have required intervention by the bankruptcy court. Claim 4, as alleged, is defective. However, the defect may possibly be cured by the allegation of other facts. Amendment of the complaint would not be futile, *SmithKline Beecham, Inc.,* 245 F.3d at 105, and therefore the bankruptcy court abused its discretion by denying leave to amend.

3. Dismissal of Amended Claim 1: §727(a)(2)(A)

Claim 1 of the SAC alleges discharge should be denied pursuant to section 727(a)(2)(A). Section 727(a)(2)(A) states in pertinent part:

> The court shall grant the debtor a discharge, unless - the debtor, with intent to hinder, delay, or defraud a creditor… has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition;

In dismissing Claim 1, the bankruptcy court states:

> The SAC pleads the same flawed allegations that formed the basis for the Courts's ruling on 12/20/16 granting judgment on the pleadings on this claim in the FAC. That claim is that the MSA was a fraudulent conveyance because it operated to transfer property **to** the debtor which **increased** her estate. Not only is that transfer <u>NOT</u> a fraudulent conveyance as to this debtor, the SAC also makes clear, the MSA in question occurred more than one year prior to the petition date so these transfers cannot form the basis of a Sec. 727(a)(2)(A) claim. Emphasis in original.

*a. Fraudulent Transfer*

It has long been recognized that "whether there was a fraudulent intent on the part of the bankrupt to dispose of [her] property in such a way as to keep it beyond the reach of [her] creditors was largely a question of fact. *Arenz v. Astoria Sav. Bank*, 281 F. 530, 531 (9th Cir. 1922) (citing *Dean v. Davis*, 242 U.S. 438, 444 (1917)). Fraudulent intent may be inferred from circumstantial evidence. *Vockner v. Battley*, 122 F.3d 1076 (9th Cir. 1997). "Where a debtor gratuitously conveyed valuable property, the burden shifts to the debtor to prove that [her] intent was not fraudulent." *Id.* (citing *Matter of Armstrong*, 931 F.2d 1233, 1239 (8th Cir.1991); *In re Mascolo* 505 F.2d 274, 276-77 (1st Cir.1974)).

Major portions of Claim 1, as set forth in the SAC in paragraphs 29 through 30.14, are recitations of allegations against Debtor's ex-husband, John. Allegations of concealment and transfer by John do not, and will not, form a basis for a claim against Debtor. However, paragraph 28 of the SAC, incorporating by "reference each and every allegation contained above" serves as Appellant's saving grace. Within the preceding paragraphs of the SAC, Appellant alleges that *after* assets were divided under the MSA,

11

Debtor transferred her separate property back to her ex-husband, John. Additionally, Appellant alleges that assets were transferred to third-parties to purchase a $975,000.00 home on behalf of the Lonnekers - a home in which they currently co-habitat. Under these facts, Appellant properly alleges Debtor's estate decreased following the MSA transfer. Despite Appellant's superfluous allegations, unartful approach and disdain for conciseness, he sufficiently alleges that assets[7] itemized in the MSA as Debtor's separate property "[were] not documented in …Janet's [schedules of assets and liabilities]" filed in December 2015, inferring either a "transfer" or "concealment."

### b. One-Year Timeframe

Section 727 (a)(2)(A) requires that a fraudulent transfer occur "within one year before the date of the filing of the petition." 11 U.S.C. §727(a)(2)(A). Debtor filed her bankruptcy petition on December 29, 2015. Pursuant to the MSA, Debtor received the assets at issue on August 15, 2014. However, the SAC does not allege any facts indicating when debtor last owned or possessed these assets, nor are there any allegations plead as to when the assets were transferred from Debtor back to John or any other third-party. Appellant failed to sufficiently allege facts to support a fraudulent transfer within the relevant timeframe. Accordingly, the bankruptcy court did not err in dismissing Claim 1.

### c. Leave to Amend

The bankruptcy court dismissed Claim 1 without further leave to amend on the same ground as Claim 4. Similarly, the Court finds that the allegation of additional facts could cure the defect. *SmithKline Beecham, Inc.*, 245 F.3d at 1052. Because the complaint alleges a cognizable legal theory as to Claim 1, and the pleading could possibly be cured by the allegation of other facts, amendment would not be futile. The bankruptcy court abused its discretion by denying leave to amend.

---

[7] Appellant specifically identifies three specialized bikes, a 1997 Ford Expedition, expensive furniture, property described as "Cash to Silver Conversion- Contingent", and multiple sets of gulf clubs.

4. Dismissal of Amended Claim 3: §727(a)(4)(A).

Claim 3 of the SAC alleges discharge should be denied pursuant to section 727(a)(4)(A). Under the plain language of § 727(a)(4)(A), a single false oath or account is sufficient to deny discharge. *Smith v. Grondin*, 232 B.R. 274, 277 (1st Cir. BAP 1999). "A false oath may involve a false statement or omission in the debtor's schedules." *Fogal Legware of Switzerland, Inc. v. Wills* (*In re Wills*), 243 B.R. 58, 62 (9th Cir. BAP 1999). To prevail on a cause of action for denial of discharge under section 727(a)(4)(A), "a plaintiff must show, by a preponderance of the evidence, that: '(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.' " *In re Retz* 606 F.3d 1189, 1197 (9th Cir. 2010). A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984). *See also In re Weiner*, 208 B.R. 69, 72 (9th Cir. BAP 1997), *rev'd on other grounds*, 161 F.3d 1216 (9th Cir.1998). A false statement or omission may be material even if it does not cause direct financial prejudice to creditors. *See Weiner*, 208 B.R. at 72; *Chalik*, 748 F.2d at 618.

The Ninth Circuit explained that a debtor acts knowingly if he or she acts deliberately and consciously. *Id.* at 1198. To prove the requisite fraudulent intent, the alleged facts must show that: (1) Debtor made the representations; (2) knew they were false; and (3) made them " 'with the intention and purpose of deceiving the creditors.' " *Id.* at 1199 (quoting *Khalil v. Developers Sur. & Indem. Co.,* 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir.2009)). "Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent." *Id.*

In dismissing Claim 3, the bankruptcy court found that the SAC did not satisfy *Fed. R. Civ. P*. Rule 9(b), which requires allegations based in fraud to be pled with particularity. In addition to "a short and plain statement of the claim," a pleading which alleges fraud

13

must meet a heightened standard. *See Fed. R. Civ. P.* Rule 9(b). An allegation of fraud must "state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); see also *Vess v. Ciba-Geigy Corp.*, *U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (stating that a plaintiff must set forth the "who, what, when, where and how" of the alleged misconduct). Rule 9(b) also requires that the complaint "set forth an explanation as to why the statement or omission complained of was false or misleading." *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (citation and quotation omitted).

Rather than clearly and concisely listing each misrepresentation made by Debtor under the third claim for relief, Appellant scatters them throughout the statement of facts. Nonetheless, Claim 3 "incorporates by reference each and every allegation contained above." Construing the complaint liberally, so as to do justice, *see Fed. R. Bank. P.* Rule 7008 (referencing *Fed. R. Civ. P.* Rule 8), the Court focuses on four instances of false oaths alleged by Appellant to have been made - specifically by Debtor - in connection with the case.[8] These include Debtor's statements related to: (a) the proposed value of assets itemized in Debtor's petition (b) the Stifel Investment Account, (c) the AMEX credit card statement, and (d) the basis for the promissory note agreeing to pay restitution to LMG in the amount of $1,059,000.00.

### a. Omission and Devaluation of Assets

Appellant alleges that Debtor omitted assets and undervalued expensive furniture and real property in her petition. He claims that "all the expensive furniture that was necessary to itemize [within the MSA] is summarized on one-line item for $3200.00[9]."

---

[8] Appellant alleges Janet made "hundreds of false oaths" at the 341(a) meeting(s), in conspiracy with John to evade responsibility for embezzling Liberty property. *Doc. No.* 7-1 at 249 ¶34.1. Only those false oaths alleged to have been made by Janet Lonneker are at issue in this appeal.

[9] Appellant submitted photos retrieved from Redfin.com of furniture and household items for the Doug Hill property. As discussed above, photos, without editorials, may be incorporated by reference and attached to a complaint if (1) they are relied on to state a claim and (2) a proper foundation is laid as to their authenticity.

*Doc. No.* 7-1 at 240 ¶13.22. The SAC alleges that assets itemized for the Thistle property are not included, indicating either a "transfer" or "concealment," and that the Thistle property itself was undervalued by $50,000 based on information available at the time the SAC was filed.

First, as to the furniture, there are no facts alleged that explain why the $3200.00 valuation is false or misleading. Listing each piece of furniture in the MSA (without the associated value), is insufficient to show that the dollar value Debtor attributed to the furniture in her petition is false or inaccurate. Although facts are alleged relating to the fair market value of the Thistle property, on or about January 10, 2017, there are no facts alleged which relate to the fair market value *at the time* Debtor filed her petition. Similarly, the court has no facts on which it may rely to explain why Debtor's valuation of the property on December 29, 2015 was false or inaccurate. The Court finds that allegations regarding the devaluation of assets is insufficiently plead.

In addition, the allegation that "all assets itemized for the Thistle property have been completely erased from the schedules" is insufficient under Rule 9b. *Fed. R. Civ. P.* 9(b). Appellant indicates that Debtor "possesses kids golf clubs and two sets of adult golf clubs [that are] unscheduled," but fails to allege, with specificity, any other unscheduled asset that was owned or possessed by Debtor *at the time* her petition was filed. Without alleging those facts, the court has no explanation as to why the omission of such assets is misleading. The Court therefore concludes that the omission of multiple sets of golf clubs is only alleged omission sufficiently plead to meet Rule 9(b).

    *b. Stifel Investment Account*

Lambertus alleges that Debtor misrepresented her ability to access financial accounts held with Stifel. *See Doc.* 7-1 at 235 ¶12.1. The SAC alleges Debtor's statements are false in light of email correspondence indicating that "Janet [Lonneker] has the form" and had direct access to communication with her ex father-in-law and Senior Vice President of Stifel Investment. See *Doc. No. 7-1* at 233 ¶11-12. The complaint further alleges that Debtor was asked about the "Cash to Silver Conversion - Contingent" asset allocated as

15

"Wife's Separate Property" in the MSA and her response was she "believes it is related to the cash inside the Stifel account" but she "was not a signatory." *Id*. at 235. These alleged misrepresentations were made by Debtor at the 341(a) meeting of creditors. The Court finds that these allegations state the time, place, and nature of the misleading statements, and the "who, what, when, where and how" of the alleged misconduct sufficient to meet the requirements of Rule 9(b).

### c. AMEX Credit Card Statement

Appellant alleges that Debtor "provided a false oath that [s]he was unable to receive [the] AMEX bill." The SAC describes the AMEX credit card statement as a record of business transactions made by LMG. The SAC further alleges that Debtor was the Chief Financial Officer (CFO) of the company, which was corroborated by statements made by Debtor at the 341(a) meeting. Appellant further alleges that Debtor's explanation that AMEX told her "she could not have them," was a misrepresentation made in an effort to conceal business transactions. The SAC sufficiently pleads time, place, and nature of the misleading statements. The Court therefore finds that the facts as alleged meet the heightened pleading requirements under Rule 9(b).

### d. The Lonnekers' Promissory Note to LMG

Last, the SAC alleges that Debtor disclaimed any knowledge about the basis for the issuance of a promissory note, executed by both herself and her estranged husband, agreeing to pay restitution to LMG of just over one million dollars. *Doc. No. 7-1* at 242, ¶ 15.3-15.4. The SAC alleges that two checks totaling $35,000.00 were issued by the Lonnekers as partial payments. In October 2013, the remaining balance of $1,024,000.00 was spilt, approximately 60/40, with John issuing a promissory note for $600,000 and Debtor issuing a separate note for $424,000.00. This split was done five months prior to the Lonnekers' divorce proceedings.

Although facts relating to John's separate promissory note may be extraneous, the SAC sufficiently alleges false oaths attributable specifically to Debtor. The SAC alleges (1) Debtor's $424,000 indebtedness to LMG, (2) that the indebtedness is secured by a

16

promissory note executed by Debtor, (3) that Debtor was named CFO of LMG, and (4) that during the creditors meeting, Debtor claimed to have no knowledge surrounding the note's issuance but insisted that it was not restitution. The SAC sufficiently pleads the who, what, when, where, and why of the alleged misconduct. The Court finds these facts are pled with sufficient particularity to meet the requirement of Rule 9(b).

Because the bankruptcy court dismissed Claim 3 of the SAC for failure to meet the heightened pleading standard under Rule 9(b), it did not reach the issue of whether the allegations plead were sufficient to state a claim for which relief may be granted pursuant to Rule 12(b)(6). *Fed. R. Civ. P.* 12(b)(6). Therefore, the Court REMANDS this action for further proceedings to determine whether facts alleged by Lambertus, *if accepted as true,* are sufficiently pled to state a claim for relief under §727(a)(4)(A).

Accordingly, **IT IS HEREBY ORDERED** that:

1. The March 30, 2017 order of the United States Bankruptcy Court is **AFFIRMED** in part and **REVERSED** in part.
    a. The Bankruptcy court's order dismissing Claims 2, and 5-11 inclusive, with prejudice, is AFFIRMED.
    b. The Bankruptcy court's order dismissing Claims 1 and 4 is AFFIRMED. The court's denial of leave to amend Claims 1 and 4 is REVERSED and REMANDED.
    c. The Bankruptcy courts order dismissing Claim 3 for failure to satisfy Rule 9(b) is AFFIRMED in part, REVERSED in part, and REMANDED. The courts order is AFFIRMED as to the portion of Claim 3 relating to the devaluation of assets and REVERSED in all other respects. The Bankruptcy court shall determine whether the surviving allegations plead in the SAC, as to Claim 3, are sufficient to state a claim under Fed. R. Civ. P. Rule 12(b)(6).

2. An amended order shall issue consistent with the rulings of this Court.

**IT IS SO ORDERED.**

DATED: March 29, 2019

                                                                                                                       _____
                                                      HON. JOHN A. HOUSTON
                                                      UNITED STATES DISTRICT JUDGE